# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | Judge |
| ) | |
| $87,318.97 Seized From Bank of America, ) | |
| Account No. XXXX-XXXX-2701, Held in ) | |
| the Name of Advanced Health S.C. AAF (As ) | |
| Agent For) Chicago Physicians Group LLC, ) | |
| et al ) | |
| ) | |
| Defendants. ) | |
| ) | |

## VERIFIED COMPLAINT FOR FORFEITURE, *IN REM*

### INTRODUCTION

The plaintiff, United States of America, through its attorneys, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, and Anthony Chmura, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is an action to forfeit and condemn the Defendants *in rem* to the use and benefit of the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C) for violations of 18 U.S.C. §§ 1035 and 1343.

### THE DEFENDANTS *IN REM*

2. The Defendants *in rem* consist of the following property:

   a. $87,318.97 seized from Bank of America, Account No. XXXX-XXXX-2701, held in the name of Advanced Health S.C. AAF (As Agent For) Chicago Physicians Group LLC;

   b. $707,303.64 seized from Bank of America Account No. XXXX-XXXX-2662, held in the name of Doug Simper and Maria Simper;
   c. $50,576.86 seized from US Bank, Account No. X-XXX-2XXXX-0044, held in the name of Doug Simper;
   d. $832.26 seized from US Bank, Account No. X-XXX-XXXX-9373, held in the name of Doug Simper;
   e. $391,970.98 seized from American Express Bank, FSB, Account No. XXXXXX2496, held in the name of Doug Simper;
   f. $250,000.00 seized from Scottrade Account No. XXXX7405, held in the name of Doug Simper;
   g. All holdings in account number XXX-XX-134, held in the name of Doug Simper at Genesis Drilling;
   h. $668,458.51 seized from Bank of America Account No. XXXX-XXXX-6356, held in the name of Doug Simper and Maria Simper;
   i. $200,000.00 seized from Bank of America Account No. XXXX-XXXX-6369, held in the name of Doug Simper and Maria Simper;
   j. $1,000,000.00 seized from Securian/Pershing, Account No. XXX-XX0951, held in the name of Doug Simper;
   k. $103,000.00 seized from Minnesota Life Insurance Company, Policy No. X-XXX-448V; and
   l. $360,000.00 seized from Prudential Qualified Retirement Plan, Account No. XXXX9598 held in the name of Doug Simper.

(Together, "the Defendant Properties.")

3. The Defendant Properties are forfeitable because they constitute or are derived from the proceeds of wire fraud in violation of 18 U.S.C. § 1343 and because they constitute or are derived from proceeds traceable to a Federal health care offense—namely, 18 U.S.C. § 1035.

## JURISDICTION AND VENUE

4. Plaintiff brings this action *in rem* to forfeit and condemn the Defendant Properties. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the Defendant Properties under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395 because the Defendant Properties are located in this District.

**FACTS**

7. The Federal Bureau of Investigation ("FBI") and others have been conducting an investigation of Advanced Health S.C. ("Advanced Health"), Chicago Physicians Group ("CPG") and related people and entities regarding, among other things, a fraud scheme with two primary facets.

8. First, Advanced Health, CPG, and their principal, Doug Simper ("Simper"), sought to profit from unnecessary treatments for osteoarthritis of the knee to the detriment of patients and at the expense of the Medicare program. Advanced Health, CPG, and Simper received millions of dollars of Medicare reimbursements through the pervasive and systematic overuse of viscosupplementation, a procedure in which the knee is injected with hyaluronic acid to lubricate and cushion the joint.

9. Simper set demanding goals for his clinic and encouraged employees to provide as many knee injections and knee braces as possible without regard for patient need. Advanced Health and CPG, therefore, provided unnecessary viscosupplementation to patients who did not require it, for example by injecting both knees of a patient who only needed injections in one and administering multiple courses of viscosupplementation to patients in succession, more frequently than the accepted standard of care.

10. Advanced Health and CPG submitted, and were paid for, medically unnecessary claims to Medicare, private insurers and others.

11. Simper and others working in concert with him received millions of dollars from Medicare and other payers through the consistent overuse of viscosupplementation.

12. The second facet of the fraud scheme began when Simper set up a new entity to evade the consequences of a Medicare overpayment assessed against Advanced Health.

13. As is set forth above, Simper owned and operated Advanced Health, which overbilled for medical services. The overbilling included both the unnecessary viscosupplementation described above and, for example, billing for services purportedly rendered by medical professionals who were outside the country at the time and billing for claims in excess of 24 hours per day per provider.

14. When Medicare became aware of the overbilling, it initiated an administrative investigation.

15. After the improper billing was discovered, the Centers for Medicare and Medicaid Services ("CMS") suspended Medicare payments to Advanced Health in 2014. Medicare/National Government Services subsequently made an overpayment recoupment demand of in excess of $15,000,000 to Advanced Health.

16. On May 14, 2014, CMS suspended payments to Advanced Health.

17. During that same time period, Simper orchestrated the creation of a new entity, CPG, which thereafter billed Medicare for substantially the same services that Advanced Health had been providing.

18. To that end, on August 28, 2014, a physician who served as the figurehead of the operation applied to open a new entity, CPG, in order to bill Medicare.

19. In its application, CPG did not disclose to Medicare Simper's financial stake in the entity, as it was required to do. In truth, Simper controlled the operations of both Advanced Health and CPG, but that information was not disclosed to Medicare.

20. Although the enrollment form directed the applicant to disclose individuals in control of the operations and those who had a greater than 5 percent ownership interest, Simper did not disclose his interest in or control of CPG. He intended to, and ultimately did, exercise control over CPG's operations and received a substantial share of its profits, which were routed to him via Advanced Health.

21. CMS approved CPG's enrollment in Medicare on December 15, 2014.

22. Shortly thereafter, CMS issued overpayment demands to Advanced Health for a total amount in excess of $14 million.

23. CPG continued to bill Medicare for the same types of services that were the subject of the overpayment demand to Advanced Health, with CMS unaware that it was paying one Simper-controlled entity for the types of claims for which it was demanding payment from another Simper-controlled entity.

24. These payments would not have been made to CPG if Simper's ownership and controlling role in that entity had been properly disclosed to Medicare during its application process.

## DISPOSITION OF THE FUNDS AND TRACING OF ASSETS

25. Between January 14, 2015 and July 31, 2017, approximately $17.2 million was deposited into Bank of America, Account No. 8580-0018-2701 ("BOA 2701"), which was held by Advanced Health S.C. AAF (As Agent For) Chicago Physicians Group LLC. About 70 percent of this total, approximately $11.9 million, consisted of deposits from Medicare. Most of the remainder were payments from private insurance companies and private party payments.

26. Doug Simper was the sole signer on BOA 2701.

27. When a seizure warrant for BOA 2701 was served on Bank of America on or about November 29, 2017, BOA 2701 had a balance of $354,494.39, which was seized by the United States. Upon information and belief, $267,175.42 was subsequently returned to US Bank.

28. Approximately $15.5 million was transferred from BOA 2701 to Bank of America No. XXXX-XXXX-2662 (BOA 2662") between January 14, 2015 and July 31, 2017. Bank records show that this account functioned as a conduit through which funds from BOA 2701 were ultimately distributed to other accounts for Simper's benefit.

29. After funds from BOA 2701 were deposited into to BOA 2662, they were subsequently transferred to other financial accounts and investments, including the other Defendants in rem, from which they were ultimately seized by the United States[1] pursuant to seizure warrants on or about November 29, 2017. In some cases, funds were transferred through and between additional downstream accounts before they were ultimately seized. All seized funds and holdings, however, remained traceable to proceeds of the fraud schemes described above.

30. For the same reason, the life insurance policy defendant ($103,000.00 from Minnesota Life Insurance Company, Policy No. X-XXX-448V) and $360,000.00 from Prudential Qualified Retirement Plan, Account No. XXXX9598, are also traceable to proceeds of the fraud scheme. Those assets were purchased through transfers directly from the 2662 Account, and are therefore traceable to the fraud scheme.

31. The Genesis Drilling Account is similarly traceable to proceeds of the same fraud scheme, although the funds used to purchase this investment vehicle were first transferred from

---

[1] The only exception to this is Account number XXX-XX-134, held in the name of Doug Simper at Genesis Drilling. This account was held in place, at Genesis Drilling, rather than being transferred to the United States Marshals Service like the other Defendant Properties. This different treatment occurred because this account was an investment in a drilling fund limited partnership, which could not be seized in the same manner as the other defendant properties.

the 2662 Account into Bank of America Account No. XXXXXXXX6356, from which $1.5 million was paid to Genesis Drilling.

32. As is set forth above, the investigation has shown that all each listed defendant in rem constitutes or is derived from proceeds traceable to the fraud schemes described herein.

**BASIS FOR FORFEITURE**

**Count 1**
**18 U.S.C. § 981(a)(1)(C) For Violations of 18 U.S.C. § 1347**

33. Section 981(a)(1)(C) of Title 18 authorizes civil forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)(F) defines the term "specified unlawful activity" as including "any act or activity constituting an offense involving a Federal health care offense." And the definition of the term "Federal health care offense" in 18 U.S.C. § 24 includes violations of, and conspiracies to violate 18 U.S.C. § 1347 (Health Care Fraud).

34. As is set forth above, the Defendant Properties constitute or are derived from proceeds traceable to Health Care Fraud in violation of 18 U.S.C. § 1347. As a result, it is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**Count 2**
**18 U.S.C. § 981(a)(1)(C) For Violations of 18 U.S.C. § 1343**

35. Civil forfeiture of the proceeds of violations of wire fraud, and conspiracy to commit mail and wire fraud, is authorized by 18 U.S.C. § 981(a)(1)(C). More specifically, § 981(a)(1)(C) authorizes forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)(A)

defines the term "specified unlawful activity" as including "any act or activity constituting an offense listed in section 1961(1) of this title." And 18 U.S.C. § 1961(1) includes violations of 18 U.S.C. § 1343 (Wire Fraud) in its definition of racketeering activity.

36. As is set forth above, the Defendant Properties constitute or are derived from proceeds traceable to Wire Fraud in violation of 18 U.S.C. § 1343. As a result, they are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## CLAIM FOR RELIEF

37. The plaintiff requests that notice of this action be given to all persons who reasonably appear to be potential claimants of interest in the Defendants *in rem*; that the Defendants *in rem* be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems proper and just.

Dated: November 7, 2022

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ Anthony Chmura
ANTHONY CHMURA
Assistant United States Attorney
219 South Dearborn Street, Rm. 500
Chicago, Illinois 60604
(312) 353-5300

## VERIFICATION

I, Loan Bermudez, verify and declare under penalty of perjury as follows:

I am and have been a Special Agent for the Federal Bureau of Investigations ("FBI") since 2004. As a Special Agent, my duties and responsibilities include conducting criminal investigations for possible violations of federal laws, including wire fraud, healthcare fraud and related conduct involving federal healthcare programs.

I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief include the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a FBI Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 11/07/22

s/ _____
Loan Bermudez
Special Agent
Federal Bureau of Investigation